Abraham J. (telmitoff,^.
This is an action by the owner pledgor of certain convertible bonds against the pledgee of the bonds, for damages alleged to have been sustained as a result of the pledgee’s failure to timely convert the bonds into common stock, or to advise the pledgor of the termination date of the right of conversion so that the pledgor could himself convert the bonds into stock.
After presentation of the evidence wa$ completed, both sides agreed that the trial of this action by a jury was inadvisable and both moved for a directed verdict, which this court held in abeyance.
The evidence at trial revealed that on October 16, 1964, plaintiff, through his broker, purchased Ashland Oil & Refining Company convertible bonds, in bearer form. The purchase was financed by a loan from the Chicago Bank, for which the bonds were collateral. On April 13, 1966, defendant took over *287 the loan from the Chicago Bank, and received the bonds as collateral. At that time defendant was also the trustee named in the trust indenture covering the bonds.
On July 12, 1967, plaintiff signed a letter agreement with defendant, providing that:
“ Referring to the collateral promissory note of the undersigned in your favor, in the amount of $90,000, and to the Security therefor (as defined in said note) [said Security including the Ashland bonds], this letter will confirm the agreement between us with respect to (a) such note; (b) all other collateral promissory notes of the undersigned in your favor now in your possession or hereafter delivered to you; and (c) any renewals or extensions of the same, as follows:
“ You shall have no responsibility for ascertaining any maturities, calls, conversions, exchanges, offers, tenders or similar matters relating to any of the Security, nor for informing the undersigned with respect to any thereof (whether or not you have, or are deemed to have, knowledge); and you shall not be required to take any steps or action as may be requested or authorized by the undersigned if you determine, in your sole discretion, that such steps or action will not adversely affect the value as collateral of the Security in question and the relative request or authorization is made in writing and is received by you in due time. ’ ’
In August of 1968, Ashland published a notice of redemption, calling the bonds, and setting September 10, 1968 as the final date for conversion to stock. Defendant, as trustee, notified all holders of record of the bonds of the call. It did not notify plaintiff, neither in its capacity as trustee — plaintiff’s bonds, it will be recalled, were in bearer form — nor as pledgee. The final date passed without the exercise of the conversion rights, and plaintiff sustained a substantial loss.
Plaintiff bases his cause of action on subdivision (1) of section 9-207 of the Uniform Commercial Code, which provides: “A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.” Under ordinary circumstances, the failure to give notice to the pledgor of a conversion call would be a violation of the pledgee’s duty to use reasonable care (Grace v. Sterling, Grace & Co., 30 A D 2d 61). Defendant, however, grounds its defense in the agreement between the parties whereby plaintiff waived such notice.
*288 Plaintiff contends that the waiver is invalid. He relies on subdivision (3) section 1-102 of the Uniform Commercial Code, which provides that the provisions of the code may be modified by agreement, except ‘ ‘ that the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed by agreement”. Plaintiff asserts that the agreement relied upon by defendant is not binding because it attempts to disclaim the obligation of reasonableness and care prescribed by subdivision (1) of section 9-207.
However, subdivision (3) of section 1-102 further. provides that “ the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.” And that is precisély what the agreement herein provides. The agreement does not provide that defendant is relieved from the burden of exercising due care in maintaining the pledged assets; it merely sets the standards by which such due care is to be measured — that is, the failure to notify plaintiff of a conversion call is not to be considered lack of due care. And, while the evidence at trial was insufficient to warrant a finding that, as defendant urges, such limiting agreements are standard practice in the banking industry, the evidence was nonetheless sufficient to demonstrate that the agreement was not ‘ ‘ manifestly unreasonable.”
Indeed, in the very case relied upon by plaintiff, Grace v. Sterling, Grace & Co. (30 A D 2d 61, supra), the Appellate Division of this Department, albeit in dicta, had occasion to discuss an agreement identical to the one at bar. And rather than stating that such an agreement was unenforcible, the court indicated that it was valid, commenting (pp. 66-67) that “ the custodian agreement with Irving Trust Company expressly put Cleveland on notice that Irving Trust Company was not assuming any obligation to keep Cleveland ‘ informed of changes affecting the collateral, such as conversions ’.”
The court accordingly concludes that the agreement between the parties is enforceable, and that defendant was under no duty to inform plaintiff of the conversion call.
But even if the court were to conclude that defendant had such a duty, it would be compelled to grant judgment to defendant because of the clear proof of plaintiff’s contributory negligence. The evidence was uncontradicted that plaintiff was an experienced investor, who kept himself informed of events in the securities market. Moreover, having signed the agreement releasing defendant from responsibility — whatever might *289 ultimately be decided as to the enforceability of that agreement— plaintiff “was fully cognizant that [he] did have a measure of responsibility with respect to the conversion features of the particular debentures.” (Grace v. Sterling, Grace & Co., supra, p. 67).
The court therefore concludes that plaintiff’s own failure to become aware of the conversion call constituted' contributory negligence, defeating his claim.
Accordingly, plaintiff’s motion for a directed verdict is denied; defendant’s motion is granted.