*553 OPINION OF THE COURT
Herman Cahn, J.
Defendant Bank of Tokyo Trust Company (BOTT) moves to dismiss the complaint based on documentary evidence pursuant to CPLR 3211 (a) (1), or, in the alternative, for summary judgment pursuant to CPLR 3212.
Plaintiff New York State Medical Care Facilities Finance Agency (MCFFA) is a New York based public benefit corporation. Pursuant to the New York State Medical Care Facilities Finance Agency Hospital Revenue Bond Resolution (MCFFA Bond Resolution or Contract) adopted December 5, 1985, MCFFA created and issued a series of revenue bonds denominated the Hospital Revenue Bonds (MCFFA Bonds). On December 30, 1985, and in accordance with a provision in the MCFFA Bond Resolution, BOTT, also a New York corporation, was appointed trustee for the MCFFA Bonds. BOTT’s official status as trustee was conferred upon its execution of the trustee’s acceptance and certificate.
The MCFFA Bonds were sold to the public. BOTT used a portion of the proceeds of the MCFFA Bond sale to purchase Massachusetts Health and Educational Facilities Authority GNMA Collateralized Revenue Bonds (Massachusetts Bonds) in the principal amount of $4,850,000.
Defendant Shawmut Bank of Boston, N. A. (Shawmut) served as trustee for the Massachusetts Bonds and acted as paying agent and registrar for these bonds, as well. As trustee for the Massachusetts Bonds, Shawmut was required to provide notice of any proposed redemption of the Massachusetts Bonds both by mailing a copy of the notice of redemption to the registered owners of the bonds to be redeemed, and by publishing notice of the redemption in two authorized newspapers. Upon any such redemption, Shawmut was required to pay the bond owners the redemption price (principal plus premium), together with interest accrued to the date of redemption. The Massachusetts Bond Resolution provided that interest will cease to accrue on the bonds subsequent to the date of redemption.
BOTT, in its capacity as trustee, was designated the registered holder of the Massachusetts Bonds for the benefit of MCFFA. From approximately June or July 1986 through January 1990, BOTT received interest payments on the Massachusetts Bonds from Shawmut, and credited such payments to MCFFA semiannually. In July 1990, however, BOTT nei *554 ther received, nor forwarded to MCFFA, any interest on the bonds. (The July 1990 semiannual interest payment would, according to MCFFA, have equalled $200,062.50.) The Massachusetts Bonds had, in fact, been called for early redemption on January 1, 1990, and as of that date, interest on the bonds had ceased to accrue.
BOTT presented the Massachusetts Bonds to Shawmut for redemption on or about July 17, 1990. MCFFA states that BOTT received two payments from Shawmut shortly thereafter, in the total amount of $4,922,625 (comprised of the principal amount of $4,850,000 plus $72,625, a portion of the premium for early redemption) and $20,375 (the balance of the total early redemption premium payment of $93,000). Presumably, these sums were then forwarded to MCFFA.
As a result of BOTT’s failure to timely present the bonds for early redemption, however, MCFFA was deprived of approximately six months’ interest which could have been generated (the lost return) had MCFFA had the opportunity to promptly reinvest the principal and premium. In short, MCFFA argues that it lost the use of almost $5,000,000 for the period from January 1 through July 18, 1990.
MCFFA claims to have demanded payment from BOTT of the interest on both the principal ($4,850,000) and on the early redemption premium ($93,000) for the relevant period, but that BOTT has refused to pay same.
MCFFA pleads three causes of action against BOTT, each arising from BOTT’s failure to promptly present the Massachusetts Bonds for redemption: (1) negligence in BOTT’s failure to meet its obligations as trustee and registered owner of the bonds; (2) breach of BOTT’s fiduciary duty as trustee, and (3) breach of contract. MCFFA seeks damages in excess of $250,000.
Article VII of the MCFFA Bond Resolution, which relates to the trustee’s duty of care, provides in relevant part that the trustee shall not be liable "except for its own negligence or default,” and that "no implied covenants or obligations shall be read into this Resolution.” (Art VII, § 703 [1].) The Resolution further provides that the trustee will not be held liable "for any action taken or omitted by it in good faith and believed to be * * * within the discretion or rights conferred upon it” (§ 703 [3]), and provides that the trustee shall be indemnified "against any liabilities which it may incur in the exercise * * * of its powers * * * and which are not due to its negligence or default” (§ 703).
*555 BOTT vigorously asserts that it had no obligation, either as a fiduciary or pursuant to the MCFFA Bond Resolution, to monitor the status of the bonds, to present the bonds within a reasonable period following a redemption call, or even to notify MCFFA of a redemption call. This is so, BOTT claims, because the MCFFA Bond Resolution specifically sets forth the exclusive duties for which BOTT was responsible, and, as no mention is made in the Contract of an obligation to monitor the bonds, BOTT was not required to do so. BOTT also insists that it did not, except in the event of a default, have a duty to exercise reasonable care in the performance of its services as trustee for MCFFA.
Plaintiffs, on the other hand, maintain that the Resolution does not relieve BOTT of "the duty to perform basic administrative tasks that are within the scope of every trustee under a trust indenture,” and furthermore, that the terms of the Resolution indicate that BOTT is liable for negligence both prior to, and in the event of, a default. Specifically, MCFFA argues that the Resolution need not spell out every possible administrative task encompassed within the scope of a trustee’s duties, and that an integral part of a trustee’s duties in holding bonds as investments is to monitor those bonds for early redemption. MCFFA emphasizes the fact that BOTT has essentially conceded having received written notice of the early redemption from Shawmut, and failed to present the bonds on time or to notify plaintiff of the early call. MCFFA argues that "[t]here can be no question that an indenture trustee has an obligation to advise the principal for whom it holds bonds as investments that it has received notice of early redemption of those bonds * * * Such a decision involves no exercise of judgment or discretion. It is a ministerial act.”
MCFFA argues that it is custom and practice in the bond industry that, as part of its normal administrative duties, an indenture trustee is responsible for, among other things, reading its mail and acting upon or passing along any notices it has received, as well as for monitoring publications for the early redemption call of bonds. MCFFA further contends that it is undisputed that BOTT had acted as trustee for MCFFA on several other bond issues prior to January 1990 in which there was an early redemption call, and that on each of these occasions BOTT had informed MCFFA of the early redemption calls and had timely presented the bonds, although there was no specific provision in any of the bond resolutions *556 governing those trustee relationships or any other documents explicitly requiring BOTT to do so.
The Court of Appeals has held that "[t]he standard by which the performance of the trustee is to be judicially measured is whether, in all the circumstances including [the granting of absolute discretion to the trustee] the trustee exercised 'such diligence and such prudence in the care and management [of the trust], as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.’ ” (Matter of Hahn, 62 NY2d 821, 824 [citations omitted].) Although the express terms of a trust may relax, constrict, or otherwise modify the standard of care to which a particular trustee is held, "[a] provision in the terms of the trust fixing a standard of care or skill lower than that which would otherwise be required of a trustee is strictly construed.” (Restatement [Second] of Trusts § 174, comment d; see also, O’Hayer v St. Aubin, 30 AD2d 419, 423 [2d Dept 1968].) Consistent with this latter principle is the requirement that specific language be evinced in order to lessen the standard of care. (See, Bogert, Trusts and Trustees § 541, at 172 [2d ed rev 1993]; see also, Dubovsky & Sons v Honeywell, Inc., 89 AD2d 993, 994-995 [2d Dept 1982]; Brodheim v Chase Manhattan Bank, 75 Misc 2d 285.) The Second Department has observed that "[i]t has been consistently held that exculpatory clauses in a contract which are intended to insulate one of the parties from liability resulting from his own negligence, will be enforced * * * when expressed in sufficiently clear, unequivocal and unmistakable language.” (Dubovsky & Sons v Honeywell, Inc., 89 AD2d 993, 994-995, supra [citations omitted].) Furthermore, even "[t]he grant of broad discretionary powers to the trustee does not relieve him from the duty to use ordinary skill and prudence in his administration of the trust.” (Bogert, Trusts and Trustees § 541, at 173; see also, Matter of Schlussel, 203 Misc 749, revd on other grounds 284 App Div 68.)
The courts in New York, however, have held that the duties of an indenture trustee, unlike those of a typical trustee, are governed by the terms of the indenture. Notwithstanding this rule, the courts have not been reluctant to impose liability upon indenture trustees in certain circumstances. Under New York law an indenture trustee is unlike the "ordinary” trustee in that "the duties of an indenture trustee are strictly defined and limited to the terms of the indenture.” (Elliott Assocs. v Schroder Bank & Trust Co., 838 F2d 66, 71 [2d Cir *557 1988] [citations omitted]; Lorenz v CSX Corp., 1 F3d 1406 [3d Cir 1993]; AMBAC Indem. Corp. v Bankers Trust Co., 151 Misc 2d 334, 338-339.) As the court in AMBAC observed, "the duties of an indenture trustee can be limited to those set forth in the indenture and, as a result, the [indenture] trustee does not owe the broad fiduciary duties of an ordinary trustee prior to an event of default, except * * * to avoid conflicts of interest.” (AMBAC Indem. Corp. v Bankers Trust Co., supra, at 338-339.)
In Grace v Sterling, Grace & Co. (30 AD2d 61), the plaintiff sued a stockbroker and trust company for negligence in failing to convert debentures into stock prior to the redemption date. Evidence was presented that the trust company, which held the debentures, had received notice of the redemption call. The First Department held that as long as the trust company continued in possession of the debentures it "was under the duty of exercising reasonable care for the preservation of the value of the investment” and that "[p]rudent banking or investment practices would suggest that, prior to redemption, the debentures be sold or converted.” (Grace v Sterling, Grace & Co., supra, at 67-68.) The Court further observed that, assuming the trust company had in fact received notice of the early redemption, it may, at a minimum, have been required to convey such information to the original pledgee in order to satisfy its obligation to act with reasonable care.
In Brodheim v Chase Manhattan Bank (75 Misc 2d 285, supra), the pledgor/owner of convertible bonds sued the pledgee bank for damages resulting from the bank’s failure to timely convert the bonds into common stock or to advise the pledgor of the conversion. The court ruled in favor of the bank in light of the clear and unequivocal language in the contract, which stated that the pledgee " 'shall have no responsibility for ascertaining any maturities, calls, conversions, exchanges, offers, tenders or similar matters * * * nor for informing the undersigned with respect to any thereof ” regardless of the pledgee’s knowledge of such developments. (Brodheim v Chase Manhattan Bank, supra, at 287.)
This court holds that the existence of the general rule governing indenture trustee does not absolve BOTT of responsibility in this action for failing to notify plaintiff of the early redemption call, because the exculpatory provisions in the MCFFA Bond Resolution do not explicitly define the parameters of BOTT’s responsibilities, nor do they unambiguously limit BOTT’s liability for negligence to postdefault events. *558 Sections 703 (1) and 705 indicate that the trustee will be liable for negligence. Section 703 (3) suggests, however, that BOTT is insulated from liability for any action taken or omitted in good faith. Further, section 703 (3) only applies to acts or omissions made in good faith where the trustee also believes such act or omission is "within the discretion or rights conferred upon it.” The most reasonable interpretation of these provisions is that, since a trustee could not reasonably believe that negligent acts or omissions, such as failing to perform its basic administrative obligations, are "within the discretion or rights conferred upon it”, the terms of the Resolution hold BOTT responsible for negligence at all times. It cannot be reasonably argued that it is within the trustee’s discretion not to promptly respond to an early bond redemption call or notify MCFFA of the early redemption call.
Moreover, the cases cited by defendant are distinguishable from the present situation. In Elliott Assocs. v Schroder Bank & Trust Co. (supra), a debenture holder brought action against the trustee, alleging that the trustee and the issuer of the debentures had conspired to time a redemption so as to avoid the issuer’s obligation to pay interest on the next due date. The debenture holder claimed that, to facilitate this plan, the trustee improperly waived a 50-day notice of redemption from the issuer. Applying New York law, the Second Circuit upheld the District Court’s grant of defendant’s motion to dismiss the complaint, emphasizing the undisputed fact that the trustee’s actions were "expressly authorized by [the indenture between trustee and issuer], which specifically allow[ed] the trustee discretion to accept shorter notice” (838 F2d 66, 70). No such express authorization exists in the Resolution in this action.
Likewise, AMBAC Indent. Corp. v Bankers Trust Co. (supra) does not resolve the issues in the present case because, while affirming the general rule that the duties of an indenture trustee are limited to those stated in the indenture, the opinion does not enumerate in detail the terms of the contract in that case. Further, since AMBAC arose in a context entirely different from that of the present case, the court stated that it need not reach the issue most relevant to the current controversy, namely, whether the trust company "had fiduciary obligations with respect to the precise predefault duties it undertook.” (AMBAC Indent. Corp. v Bankers Trust Co., supra, at 340.)
BOTT’s obligation to monitor the bonds was purely ministerial and administrative and thus involved the exercises of no *559 discretion. As a Wisconsin court has observed in a similar context, "[t]here was no room, whatsoever, for the exercise of any discretion * * * [with] respect to keeping * * * informed as to an authorized pre-payment of the bonds, and the presentation and collection of duly called bonds with reasonable promptness.” (In re Church’s Will, 221 Wis 472, 483, 266 NW 210, 214 [1936].)
Of crucial importance in the present case is the fact that MCFFA has alleged, and BOTT has not denied, that BOTT received written notice twice of the early redemption from Shawmut. In its answer, defendant Shawmut also states that written notice of the redemption was sent to all holders entitled to such notification. Significantly, BOTT has, despite its rather extensive submissions, consistently stopped short of denying receipt of actual notice.
The documentary evidence submitted by BOTT (the MCFFA Bond Resolution) does not establish BOTT’s defense to this action as a matter of law, because the Contract does not, as BOTT contends, relieve defendant of liability for its own negligence. Consequently, that part of BOTT’s motion which seeks dismissal of the complaint pursuant to CPLR 3211 (a) (1) must be denied. As noted, BOTT has alternatively moved for summary judgment pursuant to CPLR 3212. "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [citations omitted].)
BOTT has failed to show that the terms of the MCFFA Bond Resolution absolve it of the responsibility to perform basic administrative chores with regard to the bonds, and at a minimum, notifying the principal when it receives actual written notice of relevant information in connection therewith. The court finds that the obligation to fulfill these tasks is inherent in the very nature of an indenture trustee’s service and, absent a clear and unequivocal statement in the indenture (or other pertinent document) relieving the trustee of this duty, or lowering the basic standard of care, a trustee will be liable for negligence if it fails to inform its principal when communications regarding early redemption are received.
In view of the above, that part of BOTT’s motion which seeks summary judgment pursuant to CPLR 3212 must be denied.
*560 CPLR 3212 (b) provides, in relevant part, that "[i]f it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion.” (See also, Grimaldi v Pagan, 135 AD2d 496 [2d Dept 1987].) On a motion for summary judgment by any party, therefore, a court is empowered to "search the record and award judgment where appropriate.” (Supra.)
As previously stated, MCFFA has pleaded three causes of action as against BOTT based on the latter’s failure to timely present the bonds or to notify plaintiff of the redemption: negligence; breach of contract; and breach of fiduciary duty. "A cause of action sounding in negligence requires the following elements: (1) the existence of a duty owing by the defendant to the plaintiff; (2) defendant’s failure to discharge that duty; and (3) injury to plaintiff proximately resulting from such failure.” (Weigl v Quincy Specialties Co., 158 Misc 2d 753, 757 [Sup Ct, NY County 1993] [citation omitted].) MCFFA clearly has established each of these elements.
As trustee for the bonds, BOTT had a duty to exercise reasonable care at all times in its administration of the trust; as noted infra, the Contract did not relieve BOTT of this obligation. Absent a clear contractual provision limiting liability, BOTT’s mere status as an indenture trustee does not, of itself, serve to insulate BOTT from liability for its own negligence. In this regard, the Court of Appeals has observed that "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties’ relationship. Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties.” (Sommer v Federal Signal Corp., 79 NY2d 540, 551, citing Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382, 390.) Defendant breached its duty of care by failing to timely present the bonds or to notify plaintiff of the early redemption, despite BOTT’s apparent receipt of written notice from Shawmut.
MCFFA has also stated a valid cause of action for breach of fiduciary duty. Under New York law, "a fiduciary relationship exists from the assumption of control and responsibility” (see, Beneficial Commercial Corp. v Glick Datsun, 601 F Supp 770, 772 [SD NY 1985], citing Gordon v Bialystoker Ctr. & Bikur Cholim, 45 NY2d 692, 698), and it is "founded upon trust reposed by one party in the integrity and fidelity of *561 another.” (Beneficial Commercial Corp. v Glick Datsun, supra, at 772.)
BOTT clearly assumed responsibility for the performance of basic administrative services regarding the bonds, and, as registered holder of the bonds BOTT was, unlike MCFFA, entitled to receive written notice of redemptions. Having apparently received such notice, BOTT had control over this knowledge, and its failure to notify MCFFA constituted a breach of its fiduciary obligations as trustee. The fact that both MCFFA and BOTT may have had constructive notice of redemption via publication does not alter this result.
As plaintiff has stated a cause of action for breach of fiduciary duty and BOTT has not raised any triable issues of fact, plaintiff is also awarded summary judgment on this cause of action.
In light of this court’s finding that BOTT had an inherent administrative responsibility under the Bond Resolution to respond promptly to bond redemption calls, it follows that BOTT’s failure to do so constitutes a breach of contract. Thus, plaintiff is entitled to summary judgment on its breach of contract cause of action, as well.
Accordingly, defendant’s motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and for summary judgment pursuant to CPLR 3212 is denied, and upon searching the record the court awards summary judgment to plaintiff against defendant BOTT. The issue of damages shall be set down for trial.