Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware, as Receiver of National Heritage Life Insurance Company in Rehabilitation, Continental Stock Transfer & Trust Company, and Midwest Mortgage Servicing, L.L.C., Plaintiffs,

v.

NATIONAL HOUSING EXCHANGE INC., APX Mortgage Services, Inc., and Resource Asset Management, Defendants.

No. 95 C 4243.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 13, 1996.

Steven Samuel Scholes, David Brian Montgomery, David Stetler, McDermott, Will & Emery, Chicago, IL, Michael S. Oberman, Ronald S. Greenberg, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, for Donna Lee H. Williams.

Steven Samuel Scholes, McDermott, Will & Emery, Chicago, IL, Andrew Dash, Berlack, Israels & Liberman, New York City, Arnold A. Pagniucci, James A. Rolfes, Sachnoff & Weaver, Ltd., Chicago, IL, for Continental Stock Transfer & Trust Co.

Richard M. Waris, Pretzel & Stouffer, Chtd., Chicago, IL, for Midwest Independent Bank, Midwest Mortgage Servicing, L.L.C.

Robert E. Davy, Robert E. Davy, Jr. & Associates, Chicago, IL, Frederick A. Bragiel, Arlington Heights, IL, for Resource Asset Management, Inc.

Marc Oliver Beem, David J. Krupp, Diane Frances Klotnia, Miller, Shakman, Hamilton, Kurtzon & Shlifke, Chicago, IL, for David J. Krupp.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs brought suit against the defendants alleging various federal and state law violations in connection with the sale of certain debentures and the mortgage servicing for those debentures. The plaintiffs now have moved for summary judgment on Count II, seeking a declaratory judgment establishing that the defendants had no authority to transfer their powers or rights to other entities. For the following reasons, the motion is granted.

### Background

The following facts are undisputed. National Housing Exchange ("NHE") is the issuer of 21 series of 1993 8.5% Registered Collateralized Mortgage Debentures (the "Bond"). This Bond has a total face value of $126,000,000 which is secured by a pool of mortgages. NHE sold the Bond to National Heritage Life Insurance Company ("National Heritage") on December 28, 1993. On that same date, NHE entered an Indenture and Servicing Agreement (the "Indenture") with Continental Stock Transfer and Trust Company ("Continental"), which was the trustee on the Bond, and APX Mortgage Services ("APX"), which was the servicer of the mortgages securing the Bond. Subsequent to this purchase, the Court of Chancery of the State of Delaware placed National Heritage in rehabilitation and then ultimately in liquidation. The court appointed Donna Lee H. Williams, the Insurance Commissioner of the State of Delaware (the "Commissioner"), as the receiver for National Heritage.

The parties' relationship, however, deteriorated from this point onward. Continental's Chairman of the Board, Steven Nelson, wrote to APX and NHE on July 29, 1994, claiming that they had failed to comply with their respective obligations under the Indenture. A representative of the Commissioner sent a similar letter of default to APX and NHE on August 1, 1994. Finally, on November 7, 1994, less than one year after signing the Indenture, Continental sent a letter to APX and NHE terminating their respective rights under the Indenture.

Despite that termination letter, on December 19, 1994, NHE sent a letter to Midwest Mortgage Servicing ("Midwest") which appointed it as servicer for the mortgages on the condition that Midwest appoint Resource Asset Management ("RAM") as subservicer. Accordingly, on December 23, 1994, Midwest sent a letter to RAM naming it as subservicer for the mortgages. Subsequently, Continental sent a letter to Midwest on February 23, 1995 which named Midwest as the new servicer of the mortgages. The letter stated that the appointment was effective as of January 13, 1995.

Litigation has followed this paper trail of terminations and appointments ever since. The issue presently before the Court on this motion for summary judgment is whether or not NHE's appointment of Midwest as servicer and Midwest's appointment of RAM as subservicer are valid actions.

### Legal Standard of Review

A court may award summary judgment to the moving party only when there is no genuine issue of material fact and that party

is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering the motion, all reasonable inferences must be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### *Termination of NHE's Rights and Powers*

■ The Commissioner claims that Continental's letter of November 7, 1994, which terminated NHE's rights under the Indenture, precluded NHE from subsequently appointing Midwest as the servicer on December 19, 1994. RAM disputes this claim and argues that NHE and APX were not in default of their obligations under the Indenture, and therefore Continental's termination was ineffective. RAM's argument is without merit.

On April 12, 1996, I ruled on the Commissioner's motion for summary judgment on Count I. In that order, I stated that all of NHE's and APX's rights under the Indenture were terminated on November 7, 1994, the date that Continental sent its termination letter to NHE. Amended Declaratory Judgment Order at 1. Nothing has changed since I rendered that decision, and no new facts have been brought to light by RAM.

Moreover, RAM previously has taken a position directly at odds with its present argument. In March, 1996, RAM filed a Local Rule 12(N) statement of facts in connection with the Commissioner's motion for summary judgment on Count I.[1] In that prior statement, RAM agreed with the very same facts which it attempts to dispute for purposes of this motion. Specifically, it agreed with the facts contained in paragraphs 27 and 28 of the Commissioner's 12(M) statement. RAM's 12(N) Statement for Count I, ¶¶ 27–28. Those paragraphs state that NHE's and

APX's rights under the Indenture were terminated as a result of the November 7th letter from Continental, and upon termination, all of NHE's and APX's authority and power under the Indenture passed to Continental. Commissioner's 12(M) Statement for Count I, ¶¶ 27–28.

Thus, I once again find that all of NHE's and APX's rights were terminated pursuant to Continental's letter dated November 7th, 1995. As of that date, all of NHE's and APX's powers and authority passed to Continental according to Section 9.05 of the Indenture agreement. Consequently, NHE's December 19th appointment of Midwest as servicer is null and void because it had no authority or power under the Indenture to make such an appointment. Likewise, Midwest's December 23rd appointment of RAM as subservicer is invalid. Naturally, if NHE lacked authority to appoint Midwest, then Midwest had no authority to appoint RAM. This simple syllogism, however, does not dispose of this motion.

### *Continental's Appointment of Midwest as Servicer*

■ Neither RAM nor the Commissioner dispute the fact that Continental appointed Midwest to be the mortgage servicer on January 13th, 1995.[2] Rather, they dispute whether Continental's appointment of Midwest as the servicer also constituted its approval of RAM as the subservicer. The Commissioner argues that neither she nor Continental ever approved of RAM acting as the subservicer and that they took affirmative steps to deny any ratification of such an agreement between Midwest and RAM. On the other hand, RAM maintains that Continental's acceptance and approval of Midwest as the mortgage servicer automatically meant that Continental accepted and approved of RAM as the subservicer. According to RAM's argument, because RAM and Midwest already had entered an agreement for RAM to act as the subservicer, any ap-

---

1. I am referencing this statement at RAM's request. RAM has requested that the Court permit it to adopt and incorporate its 12(N) statement into its present response in opposition to the summary judgment motion.

2. RAM did argue that NHE's December 19th appointment of Midwest was effective, but, in the alternative, RAM maintained that Midwest became the servicer on January 13th pursuant to Continental's appointment.

proval of Midwest amounted to an approval of RAM. Although neither the Commissioner nor RAM frame the issue exactly right, the language of the Indenture itself and Continental's conduct toward RAM lead the Court to conclude that neither the Commissioner nor Continental have any obligations associated with RAM's contract.

As a starting point for this analysis, I repeat my finding from above that Midwest's December 23rd appointment of RAM as subservicer is invalid. Because Midwest had no powers or rights as the mortgage servicer *at that time*, it could not appoint RAM to be the subservicer. Midwest, however, did acquire the rights and powers of mortgage servicer on January 13th as a result of Continental's appointment. At that point, whether Midwest's original contract with RAM was revived or whether Midwest's actions impliedly ratified RAM as the subservicer need not be determined by the Court for purposes of this motion. The important fact to note is that RAM did act as the subservicer beginning no earlier than January 13th, and Midwest approved payment of fees to RAM for those services. RAM's Objections to Magistrate Pallmeyer's Report and Recommendation, Exh. C.

RAM and Midwest's relationship, however, is of no concern to the Commissioner or Continental. Pursuant to Section 6.01(b) of the Indenture, any agreement that a servicer makes with another entity to perform some of the servicer's obligations under the Indenture "shall be deemed to be *between such Person and the Servicer alone,* and neither the Company nor any Debenture holder shall be deemed to be parties thereto or have any claims, rights, obligations, duties or liabilities with respect to any such Person." Indeed, RAM previously has taken the position that this provision "explicitly prohibits the Commissioner and Continental from involvement with any contract between Midwest and RAM...." RAM's Objections to Magistrate Pallmeyer's Report and Recommendation, at 34–35. I agree.

Midwest, as the servicing agent, does act as an agent for the Commissioner and Continental, yet it does so only for a limited purpose. Although the Indenture expressly

creates this agency relationship, it also expressly limits that relationship. Section 6.01 clearly indicates that the subservicing agreement that Midwest entered with RAM is the exclusive domain and concern of Midwest and RAM. Neither the Commissioner nor Continental has any role in approving or disapproving of this contract. Thus, Midwest made the agreement with RAM solely on its own behalf, and any issues, obligations or problems associated with that contract must be resolved between RAM and Midwest. *See Flintridge Station Assocs. v. American Fletcher Mortgage Co.,* 761 F.2d 434, 438–39 (7th Cir.1985). RAM has come forward with no evidence to demonstrate that this provision of the Indenture is invalid or that Midwest, in its negotiations with RAM, somehow held itself out to be an agent of the Commissioner or Continental. RAM's claim that the Commissioner and Continental approved of its subservicing contract must fail because, as discussed above, the contract was between RAM and Midwest alone. RAM's conclusory statements to the contrary which are unsupported by specific facts are not enough to overcome the Commissioner's motion and create a genuine issue of material fact. *See First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir.1985). On this basis alone, summary judgment on Count II may be entered for the plaintiffs.

■ Yet even assuming *arguendo* that Midwest was somehow acting as an agent for the Commissioner and Continental when it entered the agreement with RAM, summary judgment still would be appropriate. The evidence demonstrates that the Commissioner and Continental did not approve or ratify that agreement. A principal may ratify an agent's actions "by not repudiating the agent's actions once it has knowledge of the actions, or by accepting the benefits of the actions." *Athanas v. City of Lake Forest,* 276 Ill.App.3d 48, 56, 657 N.E.2d 1031, 1038, 212 Ill.Dec. 686, 693 (1995).[3] The Commissioner and Continental took several actions in an effort to repudiate Midwest's agreement with RAM.

First, Continental, responding to a letter from RAM which informed Continental for

---

**3.** The parties have not addressed choice of law

issues on this motion. Consequently, I am apply-

the first time about RAM's new role, told RAM that any transfer of APX's role as mortgage servicer was ineffective because APX's rights had been terminated previously. Letter from Michael Nelson, President of Continental, to Frederick Bragiel, General Counsel for RAM (January 10, 1995). Second, on January 18th, the Commissioner directed Midwest to place twenty-four hour security guards outside of RAM's offices. Commissioner's Reply in Support, Exh. A at 769.

Third, Continental sent a letter to Midwest on February 23rd which formally appointed Midwest as the mortgage servicer as of January 13th. In that letter, Continental expressly disclaimed any ratification or approval of the purported appointment of Midwest by NHE on December 19th, and therefore Continental implicitly disclaimed any ratification or approval of RAM as subservicer. *See* Letter from Steven Nelson, Chairman of Continental, to Camden Fine, President Of Midwest, 2 (February 23, 1995). The date of this letter is critical, for it reveals that Continental continued to express its repudiation of RAM's role as subservicer even after it had approved of Midwest as the servicer. Finally, the Commissioner and Continental filed suit in New York in March, 1995, seeking a declaration that RAM had no right to act as a subservicer for the mortgages.[4] Overall, in a three month time period, the Commissioner and Continental took four affirmative and explicit actions which revealed a clear intent to repudiate RAM's appointment as subservicer.

█ In contrast, RAM has directed this Court to no specific acts or evidence which would indicate ratification. Rather, it states that the Commissioner and Continental have reaped benefits from its services, but it fails to specify those benefits. Again, conclusory statements which are unsupported by specific facts are not enough to overcome a motion for summary judgment. *See First Commodity Traders,* 766 F.2d at 1011. Even if I scour the record in this case for the benefits which the Commissioner or Continental may have received, the only benefit I find is

RAM's remittance of some payments from the mortgages. Not only did the Commissioner and Continental have a right and indeed an obligation to accept such payments, but "[r]atification does not occur where a principal must affirm a transaction to protect his own interests." *Bingham v. Zolt,* 823 F.Supp. 1126, 1132 (S.D.N.Y.1993). Thus, the Commissioner and Continental did not ratify Midwest's appointment of RAM as a subservicer.

### Conclusion

For the foregoing reasons, the plaintiffs' motion for summary judgment on Count II is granted. If RAM does have a right to act as subservicer for the mortgages, that right must be derived from the agreement it entered with Midwest. It does not depend on any action or inaction taken by the Commissioner or Continental, both of whom have no role or responsibilities associated with that contract.

---

ing Illinois law, which is the law of the state where this Court sits. *See Wood v. Mid–Valley, Inc.,* 942 F.2d 425, 426 (7th Cir.1991).

4. That case, which forms part of the present suit, was transferred to this Court from the Southern District of New York.