**Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware, As Receiver of National Heritage Life Insurance Company in Liquidation, Plaintiff,**

v.

**CONTINENTAL STOCK TRANSFER & TRUST COMPANY, Defendant.**

No. 96 C 8477.

United States District Court,
N.D. Illinois,
Eastern Division.

March 19, 1998.

Steven Samuel Scholes, William Paul Ziegelmueller, McDermott, Will & Emery, David J. Stetler, Stetler 7 Duffy, Ltd., for Chicago, IL, for Plaintiff.

Robert Walter Tarun, Dan K. Webb, Bruce Roger Braun, Winston & Strawn, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Donna Lee H. Williams, the Insurance Commissioner of the State of Delaware (the "Commissioner"), has sued Continental Stock Transfer and Trust Company ("Continental") alleging breach of contract and breach of fiduciary duties. Continental has filed affirmative defenses to the Commissioner's complaint as well as a counterclaim against the Commissioner which seeks indemnification for legal fees incurred by Continental. Continental moves to dismiss portions of the Commissioner's complaint, and the Commissioner, in turn, has moved to strike Continental's affirmative defenses and to dismiss its counterclaim. For the reasons set forth below, Continental's motion is granted and the Commissioner's motion is granted in part and denied in part.

## I. Background

National Housing Exchange ("NHE") was the issuer of 21 series of 1993 8.5% Registered Collateralized Mortgage Debentures (the "Bond"). The Bond had a total face value of $126,000,000, secured by a pool of mortgages. NHE sold the Bond to National Heritage Life Insurance Company ("National Heritage") on December 28, 1993. On that same date, NHE entered an Indenture and Servicing Agreement (the "Indenture") with Continental, which was the trustee on the Bond, and with APX Mortgage Services ("APX"), which was the servicer of the mortgages securing the Bond. Subsequently, the Court of Chancery of the State of Delaware placed National Heritage in rehabilitation and then ultimately in liquidation. The court appointed the Commissioner as the receiver for National Heritage.

Many of the mortgages securing the Bond were unperforming or deficient in some other manner leaving the face value of the Bond inflated by more than three million dollars. As a consequence, National Heritage suffered losses on its investment in the Bond. The Commissioner, acting on behalf of National Heritage, claims that some of the losses were due to the actions or inaction of Continental prior to closing on the Bond. Specifically, the Commissioner argues that Continental breached the terms of the Indenture [1] and its fiduciary duties by not obtaining good, valid and indefeasible title to the mortgage loans, by failing to execute a servicing fee agreement with APX, and by improperly reimbursing itself from the trust proceeds for a portion of its legal fees related to litigation involving the Bond.

Continental, in addition to denying any wrongdoing, has raised several affirmative defenses to the Commissioner's claims. Continental also has filed a counterclaim con-

---

1. The Commissioner has alleged additional breaches of contract and violation of fiduciary duty that are not at issue on this motion.

tending that the Commissioner has an obligation pursuant to the terms of the Indenture, a separate indemnity agreement, and the common law to indemnify Continental for all of the legal fees and expenses it has incurred in connection with a separate suit regarding the Bond (the "NHE Litigation").[2] The Commissioner denies that she has any duty to indemnify Continental.

## II. Continental's Motion to Dismiss

■■■■ An indenture trustee's fiduciary duties are more limited in scope than the duties of an ordinary trustee. Under New York law,[3] the duties of an indenture trustee prior to default, with two exceptions, "are strictly defined and limited to the terms of the indenture." *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir.1988) (citations omitted); *New York State Medical Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.*, 163 Misc.2d 551, 621 N.Y.S.2d 466, 470 (N.Y.Sup.Ct.1994). New York courts have placed two extra-contractual duties on an indenture trustee prior to the occurrence of default. First, the indenture trustee must avoid conflicts of interest, and second, the indenture trustee must perform all basic, non-discretionary, ministerial tasks. *LNC Investments., Inc. v. First Fidelity Bank, Nat'l Ass'n*, 935 F.Supp. 1333, 1347 (S.D.N.Y.1996). The indenture trustee owes no other duties, fiduciary or otherwise, to the debenture holders prior to a default. *Elliott Assocs.*, 838 F.2d at 71.

### A. Mortgage Loans

■■■ The Commissioner argues that Continental breached its fiduciary duties and its duties under the Indenture by failing to inspect certain documents prior to the closing of the Bond sale and to ensure that valid title to the mortgage loans was transferred at the

closing. The Commissioner claims that this duty is found in Section 2.06 of the Indenture. That section states:

> [o]n or before the Start–Up Date and as a condition to the obligations of the Servicer and Trustee under this Agreement, the Company shall deliver documents set out in Section 2.01(b) above and the following documents to the Trustee, which shall be in form and substance satisfactory to the Trustee.[4]

Section 2.01(b), in turn, lists several types of documents relating to the mortgage loans and their assignment to Continental. These are the documents that, according to the Commissioner, Continental failed to obtain prior to the closing. Complaint ¶ 31.

Under New York law, terms of an unambiguous contract may be interpreted as a matter of law, *see K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2nd Cir.1996) (citations omitted), and any claim "turning on that interpretation may thus be determined by . . . dismissal." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (citing *American Express Bank Ltd. v. Uniroyal, Inc.* 164 A.D.2d 275, 562 N.Y.S.2d 613, 614 (N.Y.App.Div.1990)). When interpreting a contract, a court should give words and phrases their plain meaning. *Id.* (citing *American Express*, 562 N.Y.S.2d at 614).

With these standards in mind, the Commissioner has failed to state a claim against Continental with respect to the mortgage loans. The Commissioner has confused the nature of the obligation contained in Section 2.06. The section states that NHE "shall deliver" these documents. Under the section, Continental had no obligations under the agreement unless NHE delivered these documents. It turns the language completely

---

**2.** See *Williams v. National Housing Exch.*, 949 F.Supp. 646, 647 (N.D.Ill.1996), for background on this separate suit.

**3.** The Indenture has a choice of law provision stating that the rights, remedies and obligations of the parties are governed by New York law. Indenture § 12.06. Under Illinois law, an express choice of law provision will not be given effect if "it would *both* violate fundamental Illinois public policy *and* Illinois has a materially greater interest in the litigation than the chosen [forum]." *English Co. v. Northwest Envirocon, Inc.* 278

Ill.App.3d 406, 663 N.E.2d 448, 452, 215 Ill.Dec. 437, 441 (1996). Neither party has contested the application of New York law to this dispute, and based on the above test, I see no reason to disturb the choice of law provision in the Indenture.

**4.** As used throughout the Indenture, the term "Company" refers to NHE, the term "Servicer" refers to APX, and the term "Trustee" refers to Continental. Indenture at 1.

around to argue, as the Commissioner does, that the section imposes obligations on Continental as opposed to NHE.

This conclusion is bolstered by several other provisions of the Indenture. First, in the warranty section, NHE warranted to Continental and National Heritage that it had good and marketable title to each of the specified mortgage loans and that execution of the Indenture would result in the valid transfer of these loans to Continental. Indenture § 4.01(v). In contrast, Continental made no such warranty to National Heritage. *Id.* § 10.13. Furthermore, the Indenture specifically insulates Continental from any liability with respect to the mortgage loans. Section 10.03 states that Continental does not assume any responsibility for the correctness or performance of the warranties provided by NHE and APX. It further provides that Continental "makes no representation as to the validity, enforceability or sufficiency of this Agreement or of the Debentures or of any Mortgage Note, Mortgage or Mortgage Loan or related document or of the sale, assignment, or transfer of, or the existence or perfection of, any interest transferred to the Trustee pursuant to Article II." *Id.* § 10.03.

The Commissioner argues that Continental owed fiduciary duties to National Heritage outside the context of its role as Indenture Trustee. She claims that Continental's limited fiduciary duties after the Indenture was signed have no bearing on its duties prior to execution of the Indenture. She claims that National Heritage reposed trust and confidence in Continental's ability to close bond transactions because National Heritage had no experience or expertise in this area. She also contends that receipt and inspection of the mortgage loan documents was a basic, non-discretionary, ministerial task which Continental should have performed prior to closing. She contends that Continental never should have closed on the Bond without having the proper documents ensuring the transfer of the mortgage loans.

■ The Commissioner attempts to evade well-settled New York law concerning the limited nature of an indenture trustee's fiduciary duties. As explained above, an indenture trustee's fiduciary duties are "strictly limited" to those contained in the indenture with the addition of two other extra-contractual duties. *Elliott,* 838 F.2d at 71; *LNC Invs.,* 935 F.Supp. at 1347. Neither of these extra-contractual duties is at issue here. The one relied on by the Commissioner, an obligation to perform basic, non-discretionary, ministerial tasks, is inapplicable in the context in which the Commissioner seeks to use it—to impose liability for failing to obtain documents whose delivery was a precondition to Continental having any obligation—because the language of the Indenture, including the indemnity provision, expressly precludes liability. The language relied on did not impose this task on Continental.[5]

■ Neither may the Commissioner hold Continental responsible on the ground that Continental breached a fiduciary duty. Although an informal fiduciary relationship can arise under New York law by the repose of trust and confidence in another party, *see Northeast Gen. Corp. v. Wellington Adver., Inc.,* 82 N.Y.2d 158, 604 N.Y.S.2d 1, 9, 624 N.E.2d 129, 137 (1993), to allow such an informal fiduciary relationship in the indenture trustee context would swallow the limitation on an indenture trustee's fiduciary duties prior to default.

**B. Servicing Fee Agreement**

■ The Commissioner further alleges that Continental breached the Indenture and its duties to National Heritage by failing to execute a servicing agreement at the time of

---

5. The Commissioner relies on *Dresner Co. Profit Sharing Plan v. First Fidelity Bank,* No. 95 Civ 1924(MBM), 1996 WL 694345, (S.D.N.Y. Dec. 4, 1996) for the proposition that an indenture trustee's failure to inspect records and other documents constitutes a violation of the ministerial task duty. I read *Dresner* differently. First, the decision relied upon involved duties arising after the inception of the trust. Furthermore, when discussing the inspection of certain records and materials, the *Dresner* court explained that no express provision in the indenture required the performance of this task. *Id.* at *5. In the absence of any express provision requiring an inspection or inquiry, the court declined to impose any liability on the trustee. *Id.* The court did not treat the duty to inspect as a basic, ministerial task.

the closing on the Bond. She states that Continental was presented with a servicing agreement to sign at the closing but never actually signed it. Consequently, she claims that National Heritage suffered losses because the servicer unilaterally established an unreasonably high servicing fee.

These allegations also fail to state a claim. The Indenture states only that the servicer is entitled to receive a servicing fee pursuant to a separate agreement. Indenture at 6, § 6.16. It contains no provision stating that Continental must execute and be a party to any servicing fee agreement. Therefore, because its duties are strictly limited to those set forth in the Indenture, *Elliott*, 838 F.2d at 71, Continental had no obligation to sign a servicing fee agreement.

### C. Retention of Legal Fees and Expenses

■ The final claim at issue on Continental's motion to dismiss is the Commissioner's allegations concerning Continental's retention of $107,000 from the trust proceeds in order to reimburse some of its unpaid legal fees and expenses. The Commissioner argues that Continental violated Section 10.05 of the Indenture by retaining the funds. Complaint ¶¶ 94–97. She alleges that Section 10.05 did not authorize Continental to retain the refunds but rather required Continental to request the funds from NHE. The Section states that:

> [NHE] will pay or reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of this Agreement, including but not limited to legal fees and disbursements . . . .

Section 10.05 cannot be read in isolation. *See Zodiac Enterprises, Inc. v. American Broadcasting Cos.*, 81 A.D.2d 337, 440 N.Y.S.2d 240, 241 (1981) ("A contract must be read as a whole in order to determine its purpose and intent, and . . . single clauses cannot be construed by taking them out of their context . . . .") (quotation omitted). The Commissioner, in her complaint, fails to

consider Section 6.05(B) which provides for an alternative means for Continental to seek reimbursement. That Section provides that the Trustee may

> make withdrawals from the Debenture Account for the following purposes and shall apply any monies withdrawn in the following order of priorities:
>
> > (i) to make payment of any unpaid Trustee's fees and expenses as set out in Section 10.05 below.

Thus, Section 6.05(B) of the Indenture not only permitted Continental to retain funds from the Debenture Account for "all reasonable expenses, disbursements and advances incurred . . . including . . . legal fees and disbursements," but it also stated that the Trustee's reimbursement of these fees was entitled to priority.[6] Continental did not violate Section 10.05 but rather proceeded under a permissible alternative provision.

■ The Commissioner also alleges that Continental breached industry standards, standards of reasonableness and due care and was otherwise not acting in the best interests of NHE in reimbursing itself for expenses. Complaint ¶ 97. However, under the common law, "trustees have an inherent equitable right to be reimbursed all expenses which they reasonably incur in the execution of the trust." *Woodruff v. New York, L.E. & W.R. Co.*, 129 N.Y. 27, 31, 29 N.E. 251, 251 (1891); *see also In re Estate of Rainone*, 33 A.D.2d 1048, 309 N.Y.S.2d 529 (1970); *In re Estate of Burke*, 129 Misc.2d 145, 492 N.Y.S.2d 892 (N.Y.Sur. Ct.1985). This right can be limited by contract, *see Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987), but in this case, Section 9.02 stated that in the event of default, the Trustee

> shall have the right, in its own name as trustee of an express trust, to take all action now or hereafter existing at law, in equity or by statute to enforce its rights and remedies . . . [and] [e]xcept as otherwise expressly provided in this Agreement,

---

**6.** The Commissioner argues that the Trustee's fees and expenses does not include legal fees. Section 6.05(B)(i) states that Continental can

withdraw fees pursuant to Section 10.05, which includes legal fees.

no remedy provided for by this Agreement shall be exclusive of any other remedy, and each and every remedy shall be cumulative and in addition to any other remedy ....

No provision in the Indenture provided for an exclusive remedy.

## III. Commissioner's Motion to Strike Affirmative Defenses

The Delaware Insurance Code enables the Commissioner of Insurance to act as a receiver. Although the Commissioner is given the title of receiver, the Commissioner has two capacities: that of a rehabilitator and that of a liquidator. *See* 18 Del. C. § 5913; *see also In re Liquidation of Ideal Mutual Ins. Co.*, 140 A.D.2d 62, 532 N.Y.S.2d 371, 374 (1988). In this case, the Commissioner was appointed as receiver for rehabilitation purposes on May 25, 1994. On November 21, 1995, the Court of Chancery of the State of Delaware placed National Heritage in liquidation. At that time, the Commissioner was no longer acting in her capacity as rehabilitator, but was solely acting as a liquidator.

 As a rehabilitator, the Commissioner and the insurance company are two separate entities. *See In re Ideal*, 532 N.Y.S.2d at 374. As a liquidator, the Superintendent steps into the shoes of the defunct insurance company and succeeds to all of its rights and remedies, and is subject to all defenses that could be raised against the company. *Id.* This is a crucial distinction for determining the viability of Continental's affirmative defenses.

### A. National Heritage's Fraudulent Conduct

 The Commissioner argues that Continental's First, Second, Third, and Certain "Other" Affirmative Defenses should be stricken because alleged fraudulent conduct committed by National Heritage and its for-

mer officers, directors, and agents cannot be imputed to the Commissioner as a receiver.[7]

Under New York law, "[t]he general rule is that a liquidator of an insurance company 'stands in the shoes' of the insolvent, gaining no greater rights than the insolvent had." *Stephens v. American Home Assur. Co.*, 811 F.Supp. 937, 947 (S.D.N.Y.1993) (quoting *Bohlinger v. Zanger*, 306 N.Y. 228, 117 N.E.2d 338 (1954); *Corcoran v. National Union Fire Ins.*, 143 A.D.2d 309, 532 N.Y.S.2d 376, 378 (1988)); *see also In re Liquidation of Union Indemnity Ins. of New York*, 89 N.Y.2d 94, 651 N.Y.S.2d 383, 390–91, 674 N.E.2d 313, 320–21 (1996). New York law supports the preservation of rights that existed prior to liquidation proceedings. *Stephens*, 811 F.Supp. at 948. Thus, Continental can assert any affirmative defenses, such as fraud, that it may have had against National Heritage because of the fraudulent conduct of its officers, directors, or agents. *Id.* at 947.

 There is an "adverse interest" exception to the above rule where "the agent ... totally abandoned his principal's interests and [was] acting entirely for his own or another's purposes. It cannot be invoked merely because he has a conflict of interest or because he is not acting primarily for his principal." *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 497 N.Y.S.2d 898, 900–01, 488 N.E.2d 828, 830 (1985).[8] The Commissioner cannot invoke this inception without a more in-depth examination of the facts as to the role of National Heritage's officers, directors, and agents. Thus, it is premature to strike these affirmative defenses.

### B. The Commissioner's Negligence

The Commissioner further argues that Continental's Third Affirmative Defense and Certain "Other" Affirmative Defenses, based on the Commissioner's contributory negligence, are unavailable. She claims that as

---

7. Although the Commissioner also argues that Continental has not plead fraud with particularity, I disagree. Continental has sufficiently detailed the alleged fraudulent acts.

8. The Seventh Circuit also held that there was a crucial distinction between fraud on behalf of the corporation as opposed to acts of fraud against the corporation. *See Schacht v. Brown*, 711 F.2d 1343 (7th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983).

receiver of National Heritage, she is not responsible for acts undertaken in good faith.

 The defense of contributory negligence relates to the negligent conduct of a party to the action. *In re Ideal,* 532 N.Y.S.2d at 374. If the allegedly negligent acts of the Commissioner were committed by her while exercising her regulatory function as a receiver, prior to liquidation, these acts cannot be charged against her. *Id.* The Commissioner is only responsible for negligent conduct committed as the plaintiff, liquidator. And even then, she may be protected if she acted in good faith.[9]

 In this case, Continental, in its affirmative defenses, has not sufficiently pled the Commissioner's negligent acts. There is no reference to what these acts were or when these acts occurred. Thus, the Commissioner's motion to strike Continental's Third Affirmative Defense is granted.

### C. Letters of Indemnity [10]

The December 29, 1993 letter from National Heritage to Continental stated that National Heritage "agrees to hold the Trustee harmless for any and all claims relating to the mortgage files and any and all documentation relating thereto. In making the purchase of the Debentures herein, this Company is relying on its own investigation and due diligence . . . ." The Commissioner argues that this letter does not release Continental from any liability because the Commissioner is not claiming that Continental failed to do due diligence but rather that Continental should never have closed the bond sale at all. For the reasons discussed earlier in this opinion, this affirmative defense will not be dismissed.

### D. Insufficient Pleading

 Pursuant to Federal Rule of Civil Procedure 8(c), "[a]n affirmative defense must sufficiently apprise the opposing party of the nature of the defense, providing the opposing party with adequate notice of the

relevant elements of the defense." *D.S. America (East), Inc. v. Chromagrafx Imaging Sys., Inc.,* 873 F.Supp. 786, 797 (E.D.N.Y.1995) (citing *Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 737–38 (N.D.Ill.1982)). In Continental's Other Affirmative Defenses, it claims "acquiescence, consent, estoppel, waiver, ratification, laches, unclean hands and *in pari delicto.*" Presumably, these defenses are based on National Heritage's alleged fraudulent conduct but Continental does not specifically state their bases. Therefore, these defenses are dismissed.

## IV. Commissioner's Motion to Dismiss Counterclaims

The Commissioner and Continental instituted the NHE Litigation on March 7, 1995. Continental's counterclaim seeks reimbursement for legal fees and expenses incurred in that litigation under three separate theories.

### A. Indemnity from the Indenture

 The Indenture provided Continental with two methods of reimbursement for its fees and expenses: Continental could either request payment from NHE pursuant to Section 10.05 of the Indenture or Continental could withdraw the amount from the Debenture Account pursuant to Section 6.05(B). *See, supra,* Part II.C. The Debenture Account contained the mortgage proceeds.

The Bond and the Indenture were extinguished in the NHE Litigation on April 12, 1996, and along with it, the Debenture Account. All the mortgage proceeds were subsequently sent directly to the Commissioner. The Commissioner argues that because the Indenture and Debenture Account were extinguished, Continental is not entitled to reimbursement under the Indenture.

It is undisputed that Continental accrued fees in the NHE Litigation from March 7, 1995 until the Bond was extinguished on April 12, 1996. Continental withheld the amount of these fees. The Commissioner's

---

9. The Commissioner is not liable for "any statements made or conduct performed in good faith while carrying out [her duties]." 18 Del. C. § 330(a).

10. The second letter of indemnity, dated January 30, 1995, is discussed under the Commissioner's motion to dismiss Continental's counterclaims.

argument with respect to the termination of the Indenture is therefore irrelevant as to these fees. As to later incurred fees, the only section that mentions survival upon termination is Section 10.12. However, that Section only concerned NHE's liability to the Trustee. Thus, the Indenture does not provide a basis for a claim as to these amounts.

## B. Indemnity Under Common Law

As stated in Part II.C above, under the common law, a trustee has an equitable right to reimbursement of legal fees and expenses incurred in the execution of its trust. *Woodruff v. New York, L.E. & W.R. Co.*, 129 N.Y. 27, 29 N.E. 251, 251 (1891). Since the Indenture did not explicitly limit Continental's remedies, the Commissioner's motion to dismiss this claim will be denied.

## C. The January 30, 1995 Indemnity Agreement

The Commissioner signed an Indemnity Agreement Letter between the Commissioner and Continental dated January 30, 1995. In it, the Commissioner released Continental from specific future obligations and agreed to indemnify Continental for claims regarding the released obligations. The Letter cannot be read to indemnify Continental for any other actions, including the NHE Litigation that was commenced prior to January 30, 1995. Thus, this claim will be dismissed.

## V. Conclusion

For the reasons set forth above, Continental's motion to dismiss certain claims in the Complaint is granted. The Commissioner's motion to strike Continental's affirmative defenses is granted in part and denied in part. Continental's Third, part of its Fourth, and its Other Affirmative Defenses are stricken without prejudice. The Commissioner's motion to dismiss Counts I and II of Continental's counterclaim is granted in part; her motion to dismiss Count III is granted.