STATE ex rel. DEWEY & LEBOEUF, LLP, Relator,

v.

Honorable Kevin CRANE, Boone County Circuit Judge, Respondent.

No. WD 73151.

Missouri Court of Appeals, Western District.

Dec. 28, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2011.

Application for Transfer Denied March 29, 2011.

Dale C. Doerhoff, Jefferson City, MO, for relator.

Anthony R. Behr, Clayton, MO, for respondent.

Before Writ Division: CYNTHIA L. MARTIN, Presiding Judge, JAMES M. SMART, JR., Judge and JAMES E. WELSH, Judge.

CYNTHIA L. MARTIN, Judge.

This action arises out of a Petition in Prohibition and Mandamus filed by Relator Dewey & LeBoeuf, LLP ("Dewey & LeBoeuf") in response to two Orders issued by Respondent, The Honorable Kevin Crane, Boone County Circuit Judge, on November 1, 2010 ("November 1, 2010 Order" or "Orders"), addressing discovery disputes in the underlying lawsuit styled *John M. Huff, et al., Plaintiffs v. Dewey & LeBoeuf, LLP, et al., Defendants*, Case No. 09BA–CV04635, pending in the Circuit Court of Boone County, Missouri ("Underlying Lawsuit").

The Underlying Lawsuit is a legal malpractice action against Dewey & LeBoeuf filed by John M. Huff, the Director [1] of the Missouri Department of Insurance ("MDI"),[2] in his capacity as liquidator for General American Mutual Holding Company ("GAMHC"), and by Albert A. Riederer as special deputy liquidator for GAMHC

1. We use the term "Director" in this Opinion to refer not only to Mr. Huff but to any person serving as the Director of the Missouri Department of Insurance (now known as the Department of Insurance, Financial Institutions & Professional Registration) during the time frame applicable to the matters addressed in this Opinion. At certain times, the Director has also been Keith Wenzel, Scott Lakin, Dale Finke, Doug Ommen, and Linda Bohner.

2. The current name of MDI is the Department of Insurance, Financial Institutions & Professional Registration.

(collectively "the Liquidators"). Dewey & LeBoeuf served as counsel for GAMHC and/or for some of its subsidiaries immediately prior to the Director's assumption of control of GAMHC in the Director's capacity as a Receiver[3] under the Missouri Insurer's Supervision, Rehabilitation, and Liquidation Act, RSMo sections 375.1150 to 375.1246 (the "Act"). Loosely stated, the allegations against Dewey & LeBoeuf in the Underlying Lawsuit call into question the advice provided GAMHC[4] preceding and in response to the Director's assumption of control GAMHC pursuant to the Act. The Underlying Lawsuit was filed in connection with proceedings undertaken or authorized by the Director pursuant to the Act.

Dewey & LeBoeuf served a subpoena duces tecum on the law firm of Sidley & Austin seeking documents (the "Sidley Documents") associated with advice and counsel provided by Sidley & Austin to MDI and/or the Director in connection with GAMHC matters. Dewey & LeBoeuf claimed the advice and counsel provided by Sidley & Austin in connection with GAMHC matters had been placed "at issue" by the Underlying Lawsuit. In response to the subpoena, Sidley & Austin advised that the Sidley Documents had been delivered to MDI and were no longer in Sidley & Austin's possession.

MDI and the Director refused to produce the Sidley Documents. Dewey & LeBoeuf moved to compel the Director in both his capacity as the Director of MDI and as Receiver to produce the Sidley Documents. MDI filed opposition to Dewey & LeBoeuf's motion to compel as a

"non-party," claiming that all of the Sidley Documents belonged to MDI and were subject to MDI's attorney/client privilege—a privilege that had not been waived by MDI and could not be waived by any act of the Director, including the Director as Receiver.

MDI also filed a motion to seek the return of an August 30, 1999 letter from Sidley & Austin to MDI (the "Sidley Letter") claiming the letter to be subject to MDI's attorney/client privilege. Dewey & LeBoeuf opposed the motion. The Sidley Letter has been in Dewey & LeBoeuf's possession for some time and has been used in discovery in the Underlying Lawsuit. MDI claimed Dewey & LeBoeuf did not obtain a copy of the Sidley Letter with MDI's voluntary consent and that MDI has not, therefore, waived its attorney/client privilege attached to the Sidley Letter. MDI also claimed that the Sidley Letter belonged to MDI and was subject to MDI's attorney/client privilege—a privilege that had not been waived by MDI and could not be waived by any act of the Director, including the Director as Receiver.

The November 1, 2010 Orders ordered all parties, including Dewey & LeBoeuf, to return of all copies of the Sidley Letter by November 10, 2010, and denied Dewey & LeBoeuf's motion to compel production of some, but not all, of the Sidley Documents.

On November 8, 2010, Dewey & LeBoeuf filed its Petition for Writ of Prohibition and Mandamus. This court entered its order dated November 9, 2010, staying the force and effect of the Respondent's

---

3. Section 375.1152(16) of the Act defines "receiver" as "a receiver, liquidator, administrative supervisor, rehabilitator or conservator, as the context requires." We use the term "Receiver" in this Opinion to refer to the Director acting in any of the capacities incorporated within this statutory definition.

4. Our use of GAMHC in this Opinion refers to GAMHC and to all of its subsidiaries identified in this Opinion.

November 1, 2010 Orders until further order of this court.

We now issue our peremptory writ of prohibition and mandamus, and remand this case with instructions.[5]

### Statement of Facts and Procedural History

On August 10, 1999, General American Life Insurance Company ("GALIC") was placed under Administrative Supervision by the Director pursuant to the Director's authority under section 375.1160. GALIC is wholly-owned by GenAmerica ("Gen-Am"), which is in turn wholly-owned by GAMHC. As a result, the order placing GALIC under Administrative Supervision automatically made GAMHC a party to the Administrative Supervision.

On August 25, 1999, Dewey & LeBoeuf sent a confidential letter to Keith Wenzel, the then Director. Director Wenzel had requested the views of Dewey & LeBoeuf in connection with a proposed reorganization and sale of GenAm. The extensive letter from Dewey & LeBoeuf made certain recommendations with respect to the course of a proposed sale of GenAm to achieve "a global solution to the liquidity crisis that caused GALIC to request Administrative Supervision pursuant to" the Act.

On August 26, 1999, Eric Martin, General Counsel to MDI, sent a letter to Sidley & Austin, a law firm located in Chicago, Illinois. The letter attached the August 25, 1999 letter from Dewey & LeBoeuf to the Director and raised four specific questions about the analysis articulated in the Dewey & LeBoeuf letter, requesting Sidley & Austin's response.

On August 30, 1999, Sidley & Austin directed its response (the Sidley Letter) to the attention of "Eric A. Martin, General Counsel, Missouri Department of Insurance." The Sidley Letter responded to the questions raised in Mr. Martin's August 26, 1999 letter, and generally reflected Sidley & Austin's acquiescence in the advice offered by Dewey & LeBoeuf.

On September 17, 1999, Keith Wenzel, Director, filed a Verified Petition for Rehabilitation against GAMHC pursuant to his authority under section 375.1165. The Director noted in paragraph 9 of the Verified Petition, that "on August 10, 1999 the Director issued an Order of Administrative Supervision respecting GALIC (the "Supervision Order"), after determining that one or more of the conditions set forth in section 375.1160.2(1) of the Missouri Insurer's Supervision, Rehabilitation, and Liquidation Act ... existed." In paragraph 11 of the Verified Petition, the Director provided that:

> following issuance of the Supervision Order, the Department [referring to MDI] worked closely with GALIC and GAMHC to resolve the crisis caused by GALIC's inability to satisfy the funding agreement surrenders in a fashion that would fully protect the members of

5. Rule 84.24(j) permits the court to exercise its judgment in dispensing with such portions of the procedure for the consideration and/or issuance of original writs as is necessary in the interests of justice. We have elected to dispense with the issuance of a preliminary writ of prohibition and mandamus and to dispense with the briefing schedule that would ordinarily thereafter ensue, as the parties' suggestions, suggestions in opposition, reply suggestions, and sur-reply suggestions filed in connection with Relator's petition for writ of prohibition and mandamus have done an exceptional job of addressing the legal issues addressed in this Opinion, rendering additional briefing unnecessary, and rendering the delay that would be associated with the issuance of a preliminary writ contrary to the interests of justice. We are expressly authorized by Rule 84.24(*l*) to issue this peremptory writ without the issuance of a preliminary writ.

GAMHC and the policyholders of GAL-IC. Both GALIC and the Director retained experienced, legal and investment banking advisors to provide strategic and financial advice with respect to the options. GALIC's advisers recommended that the best means of preserving the value inherent in GALIC for the members and policyholders was a sale of GAC [referring to GenAm] (together with its subsidiaries, such as GALIC), and so advised the Director. GAMHC thereupon assembled a sale process designed to elicit offers for the purchase of GAMHC's stock in GAC. There were many expressions of interest in response to the sale process, and an auction developed with improvements in the bids occurring during the process. *The Director's advisors also concurred in this strategy.*

(Emphasis added.) The allegations in the Director's Verified Petition for Rehabilitation, and in particular those in paragraph 11, are referring to the August 25, 1999 letter from Dewey & LeBoeuf to the Director, and to the Sidley Letter.

The Director, in the Verified Petition for Rehabilitation, requested the Court's Order naming the Director as Rehabilitator of GAMHC pursuant to section 375.1166. The Circuit Court of Cole County, Missouri, entered an Order of Rehabilitation appointing the Director as the Rehabilitator on September 17, 1999.

On December 15, 1999, the Director "in his capacity as Rehabilitator of the General American Mutual Holding Company (the "Receiver")" applied to the Circuit Court of Cole County for an order approving a rate of compensation for the law firm of Sidley & Austin "pursuant to the terms of the engagement agreement entered into between the Receiver and Sidley & Austin." The Director noted in paragraph 1 of the application that the Circuit Court of Cole County's September 17, 1999 Order of Rehabilitation had appointed him as Rehabilitator and noted in paragraph 2 of the application that in accordance with the section 375.1168:

the director as rehabilitator ... may employ such counsel ... as deemed necessary. The compensation of ... counsel ... and all expenses of taking possession of the insurer and of conducting the proceedings shall be fixed by the director with the approval of the Court and shall be paid out of the funds or assets of the insurer.

The application continued with the Director's assertion in paragraph 3 that "in accordance with his powers under the Missouri Insurance Receivership Statutes and Rehabilitation Order, the Receiver has retained the law firm of Sidley & Austin to represent the Receiver in advocating, litigating (if necessary) and implementing the plan of reorganization that this Court approved on November 10, 1999." The application also alleged in paragraph 4 that:

Sidley & Austin was first retained in May, 1999, following a competitive selection process, *as counsel to the Director* of the Missouri Department of Insurance to provide advice in connection with the then contemplated demutualization of GAMHC. Following the liquidity crisis which led the Director placing GAMHC's subsidiary, GALIC, into Administrative Supervision on August 10, 1999, *the Director, in his role as statutory supervisor, continued to seek Sidley & Austin's advice.*

(Emphasis added.) The application alleged in paragraph 5 that:

[a]s *counsel to the Director in his role as supervisor* of GALIC, Sidley & Austin attorneys brought to bear their collective experience in the law and practice of the following fields: mutual holding companies, demutualization, in-

surance tax, insurance regulation and insurance reorganization and rehabilitation, *to advise and consult with the Director* in connection with (i) analyzing GALIC's situation after the Director placed it in supervision, (ii) *advising the Director with respect to alternative solutions for the situation GALIC found itself in,* (iii) assisting in negotiating with representatives of GALIC and of potential buyers of GALIC's immediate holding company parent and its subsidiaries, and (iv) ultimately, preparing a plan of reorganization in connection with the sale.

(Emphasis added.) The application continued with the Director's request to approve an engagement agreement entered into between the Receiver and Sidley & Austin, to approve compensation rates, and to advise the Circuit Court of Cole County that the Director believed he was required and would require the advice, counsel, and advocacy of Sidley & Austin in connection with approval of a plan of reorganization and its ultimate implementation in connection with GAMHC.

Notably, the aforesaid application, along with innumerable other pleadings filed in connection with the extensive GAMHC insolvency proceedings, are, with virtually no exception, signed by *Eric Martin, General Counsel for MDI,* who represents on the pleadings that *he is representing the Director in his capacity as a Receiver.*

The proceedings involving GAMHC evolved into liquidation. On the Director's motion, the Director was appointed as Liquidator. At some point along the way, the Director sought the court's authority to appoint Albert Riederer as a special deputy pursuant to section 375.1168.1 (permitting special deputy rehabilitators) and/or section 375.1176.2 (permitting special deputy liquidators). Through the course of the GAMHC insolvency proceedings conducted pursuant to the Act, Sidley & Austin provided advice and counsel to the Director in the capacity as Receiver and to the special deputy.

The liquidation of GAMHC resulted in several lawsuits being initiated by the Liquidators against third parties on varied claims that professional malfeasance had caused GAMHC damage. It appears from the record that all of these lawsuits have been resolved via settlements yielding millions of dollars to the GAMHC insolvency proceedings. It also appears from the record that the sale of GenAm recommended by Dewy & LeBoeuf, and also apparently recommended by Sidley & Austin, closed; such that the GAMHC liquidation was, for all intents and purposes, complete. However, after the closing of the sale of GenAm, and after the approved distribution of the proceeds of the liquidation proceedings, the Underlying Lawsuit was filed by the Liquidators.

As noted, discovery disputes in the Underlying Lawsuit resulted in the issuance of the November 1, 2010 Orders. The first Order required Dewey & LeBoeuf and all other parties to return all copies of the Sidley Letter to MDI. The second Order granted Dewey & LeBoeuf's motion to compel with respect to certain Sidley Documents [6] but denied the motion to compel with respect to the Sidley Documents de-

---

6. Respondent overruled "privileged" objections on the privilege logs for Boxes B1 through B18 on grounds other than attorney/client privileged (Paragraph One), and granted the motion to compel the production of any Sidley Documents in Boxes B1 through B18 that are not communications between Sidley and MDI to secure legal advice, and thus overruled the "privileged objections asserted as to such documents" (Paragraph Two).

scribed in the proposed order prepared by Dewey & LeBoeuf as follows:

> 3. "Privileged" objections asserted on the privilege logs for Boxes B1 through B18 as to documents in the Sidley files that are communications between Sidley and the Department of Insurance **between May 14, 1999 and August 10, 1999,[7] concerning the demutualization of General American Mutual Holding Company** are not protected by the attorney-client privilege because of the at-issue waiver. . . .
>
> 4. "Privileged" objections asserted on the privilege logs for Boxes B1 through B18 as to documents in the Sidley files that are communications between Sidley and the Department of Insurance **between August 10, 1999, and the date General American Life Insurance Company was placed into receivership under the Order of Administrative Supervision, and January 6, 2000, when the sale of GenAmerica Corporation to MetLife closed,[8]** are not protected by the attorney-client privilege because of the at-issue waiver. . . .

(Emphasis added.) The Respondent noted his denial of Dewey & LeBoeuf's requests for these documents by "lining through" paragraphs three and four of the proposed order and writing "Denied KC" in the left margin next to the two paragraphs. (The "denied" paragraphs will be referred to in this opinion as Paragraph Three and Paragraph Four.)

The Respondent entered the Orders in stated reliance on a legal conclusion that there is distinction between MDI and the Director such that the acts of the Director, including the Director as Receiver, cannot operate to waive MDI's attorney/client privilege. Respondent thus relied on a necessarily implied conclusion that the Sidley Documents and the Sidley Letter "belong" to MDI such that any privilege attached to the documents "belongs" to MDI. In reliance on these conclusions, the Respondent ruled that MDI's attorney/client privilege with respect to the Sidley Documents and the Sidley Letter had not been waived by MDI, could not be waived by the Director on MDI's behalf, and thus could not be waived by the Director as Receiver's assertion of claims in the Underlying Lawsuit that placed the advice of Sidley & Austin to MDI "at issue." The Respondent did not review any of the Sidley Documents within the scope of Paragraphs Three and Four[9] (with the exception of the Sidley Letter) *in camera* in advance of entering its Orders. Thus, the Respondent has not made (and could not have made) an independent determination with respect to whether any particular document: (i) is, in fact, an attorney/client privileged communication,[10]

---

7. May 1999 is when Sidley & Austin was hired by the Director to provide advice in connection with the then contemplated GAMHC demutualization. August 10, 1999, is the day the Director entered its Administrative Suspension order and, thus, commenced supervision of GAMHC pursuant to the authority afforded the Director by the Act.

8. During this time frame, the Director would have been acting as the Receiver, and Sidley & Austin would have been providing advice to the Director in that capacity.

9. The Sidley Letter falls within the category of documents identified in Paragraph Four. As the Respondent noted on the record during the November 1, 2010 hearing, his ruling on the Sidley Letter was controlled by the same analysis with respect to the distinction between MDI and the Director applicable to his ruling on the other Sidley Documents sought by Dewey & LeBoeuf in Paragraph Four.

10. We reiterate the Respondent did order the production of any documents that are not attorney/client privileged communications in Paragraph Two of one of the Orders. See footnote 6.

or (ii) if so, whether MDI or the Director is the one who had the communication with Sidley & Austin, or (iii) whether the communication relates to a subject matter "at issue" in the Underlying Lawsuit. This Opinion will not address those open questions but, instead, will address the core issue underlying the Respondent's Orders relating to the Director's ability to waive MDI's attorney/client privilege.

### Applicable Standard of Review

 " 'A writ of prohibition or mandamus is the proper remedy for curing discovery rulings that exceed a court's jurisdiction or constitute an abuse of the court's discretion.' " *State ex rel. White v. Gray,* 141 S.W.3d 460, 463 (Mo.App. W.D.2004) (quoting *State ex rel. Atchison, Topeka & Santa Fe R.R. v. O'Malley,* 888 S.W.2d 760, 761 (Mo.App. W.D.1994)). A writ of prohibition is appropriate where necessary to prevent a court from ordering discovery or enforcing motions that constitute an abuse of discretion, cause irreparable harm, or are an exercise of extra-judicial power. *See, e.g., State ex rel. Barker v. Tobben,* 311 S.W.3d 798, 800 (Mo. banc 2010). Mandamus is appropriate where a court abuses its discretion in denying discovery "because a trial court has no discretion to deny discovery of matters which are relevant to the lawsuit and are reasonably calculated to lead to the discovery of admissible evidence when the matters are neither work product nor privileged." *State ex rel. Rowland v. O'Toole,* 884 S.W.2d 100, 102 (Mo.App. E.D.1994).

 A trial court "abuses its discretion if its order is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *State ex rel. Ford Motor Co. v. Messina,* 71 S.W.3d 602, 607 (Mo. banc 2002). Obviously, if the trial court's discovery order is based on an erroneous conclusion of law, then the order is subject to reversal. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### Analysis

### The Distinction between MDI and the Director

The Department of Insurance is created and governed by Chapter 374 of the Revised Statutes of Missouri. Section 374.010 provides "[t]he department of insurance ... shall be charged with the execution of all laws now in force, or which may be hereafter enacted, in relation to insurance and insurance companies doing business in this state, and such other duties as are provided for by law."

 Section 374.020.1 provides that:
[t]he chief officer of said department shall be designated as the Director of the Department of Insurance. He shall be a citizen of this state, and experienced in matters of insurance, and be appointed by the governor, by and with the advice and consent of the senate, and shall hold his office until his successor is appointed and qualified, and shall be subject to removal from office by the governor at his pleasure.

Section 374.040.1 provides that:
[i]t shall be the duty of the director of the insurance department ... generally to do and perform with justice and impartiality all such duties as are or may be imposed upon him by the laws regulating the business of insurance in this state and to perform those duties imposed upon him in such a manner as to be in the best interest of and protect the general public, policyholders, insurance companies, and the officers, directors and stockholders thereof[.]

Section 374.045.1 provides that:
The director shall have the full power and authority to make all reasonable

rules and regulations to accomplish the following purposes:

(1) To regulate the internal affairs of the department of insurance;

(2) To prescribe forms and procedures to be followed in proceedings before the department of insurance; and

(3) To effectuate or aid in the interpretation of any law of this state pertaining to the business of insurance.

MDI as a legally constituted department is a legal entity. It is, however, inanimate and has no capacity to *act* except through its authorized representatives. In this respect, MDI is no different from a corporation, which, though legally constituted, is not "living" and thus has no capacity to function except through the efforts of persons empowered and authorized to do so on its behalf. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) ("As an inanimate entity, a corporation must act through agents."). Clearly, in accordance with the aforesaid statutes, the Director is a person and, in fact, is the principal person, empowered, and authorized to act for MDI.

 As a legally constituted entity, MDI enjoys the protection of the attorney/client privilege. *See, e.g., Lause v. Adolf*, 710 S.W.2d 362, 364 (Mo.App.1986) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 608 (8th Cir.1977)) (holding that a corporation, like an individual, enjoys the protection of the attorney/client privilege). However, MDI, like a corporation, and as an inanimate entity, " 'cannot speak directly to its lawyers.' " *Id.* (quoting *Commodity Futures Trading Comm'n*, 471 U.S. at 348, 105 S.Ct. 1986). " 'Similarly, it cannot directly waive the privilege when disclosure is in its best interests. Each of these actions must necessarily be taken by individuals empowered to act on behalf' " of MDI. *Id.*

[T]he power to waive the corporate attorney/client privilege rests with the corporation's management and is normally exercised by its officers and directors. The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interest of the corporation and not themselves as individuals.

*Id.* As applied to MDI, the power to waive MDI's attorney/client privilege rests with the Director (or those acting under the auspices of the Director, such as Mr. Martin, the General Counsel), who must exercise the privilege (including its waiver) in a manner consistent with the Director's duty pursuant to section 374.040.1:

generally to do and perform with justice and impartiality all such duties as are or may be imposed upon him by the laws regulating the business of insurance in this state and to perform those duties imposed upon him in such a manner as to be in the best interest of and protect the general public, policyholders, insurance companies, and the officers, directors and stockholders thereof[.]

Here, the Director (or those acting under the auspices of the Director, such as Mr. Martin, the General Counsel) would necessarily have created the attorney/client relationship between MDI and Sidley & Austin. If the Director or those operating under the Director's instruction have the authority to create an attorney/client relationship between MDI and Sidley & Austin, then the Director or those operating at the Director's instruction certainly have the authority to waive that privilege on MDI's behalf if doing so is consistent with the Director's duties as described by Missouri statute.

No one claims that the Director (or those acting under the Director's supervision such as Mr. Martin, General Counsel) at anytime acted in their own individual

interests in connection with the GAMHC matters. In fact, it is evident that the Director acted to enforce his duties and responsibilities under the Act. MDI is, according to section 374.010, "charged with the execution of all laws now in force, or which may be hereafter enacted, in relation to insurance and insurance companies doing business in this state, and such other duties as are provided for by law." By enforcing the Act, the Director was enforcing a law MDI was bound to execute and was thus acting on MDI's behalf.

Thus, there is no merit to MDI's contention that there is a legal distinction between the Director and MDI, preventing the Director from "waiving" MDI's attorney/client privilege when the Director is performing the official business of MDI. In this regard, any and all communications the Director (or those acting under the supervision of the Director, such as Mr. Martin, General Counsel) had with Sidley & Austin in the course of conducting the business of MDI were communications on behalf of MDI.[11]

### The Distinction between the Director as "chief officer" and as "Receiver"

■ Though not expressly argued by MDI to the Respondent, it is evident in the voluminous briefing filed by the parties in this Original Proceeding, that MDI further argues, in effect, that even if the Director can waive MDI's attorney/client privilege, such waiver only applies if the Director is acting as the chief officer of MDI and not when the Director is acting as Receiver. We must explore, therefore, the distinction between the Director as chief officer of MDI and the Director as Receiver in the context of this particular discovery dispute.

The Act "simplifies and regulates the resolution of insurer rehabilitations and liquidations, which often affect policyholders and creditors located in several states. The Act permits the State's Director of the Department of Insurance to place an insurer under administrative supervision where the Director deems it appropriate." *State ex rel. Dykhouse v. Edwards*, 908 S.W.2d 686, 687 (Mo. banc 1995). Under the Act, no discretion is vested in the court as to the appointment of a rehabilitator, receiver, or liquidator. Section 375.1165 provides that "the Director may apply by petition to the court for an order authorizing him to rehabilitate a domestic insurer." Section 375.1166 provides that in "order to rehabilitate a business of a domestic insurer ... shall appoint the director and his successors as rehabilitator." Section 375.1176 provides that "[a]n order to liquidate the business of a domestic insurer shall appoint the director and his successors as liquidator." Sections 375.1168 and 375.1176.2 authorize, respectively, the Director to appoint one or more special deputies who shall have the powers and responsibilities of the rehabilitator or liquidator.

The import of these collective statutes is to vest no discretion in a court as to the appointment of a rehabilitator or liquidator. However, once appointed, the Director and his special deputies are subject to the specific supervision of the court.

11. Even were we to conclude that, in the context of the discovery disputes raised in this case, MDI is distinguishable from the Director, we would then be required to direct the trial court to determine whether attorney/client privileged communications between Sidley & Austin and MDI were shared with the Director. MDI cannot claim on the one hand that it possesses a privilege distinct from the Director which the Director cannot waive on its behalf, while on the other hand ignoring that any sharing of purportedly distinct attorney/client privileged communications between MDI and the Director in either the Director's capacity as chief officer of MDI or as Receiver would bear the consequence of waiver of the privilege.

*State ex rel. Angoff v. Wells*, 987 S.W.2d 411, 414 (Mo.App. W.D.1999). "The Director, as liquidator and his special deputies, along with their employees, agents and attorneys, and all employees of the State of Missouri, when acting with respect to a liquidation are considered to be officers of the court." *Id.*; see section 375.1182.5. *But see, e.g., Wells,* 987 S.W.2d at 414 (holding that a court is not empowered to prevent the Director from discharging a special deputy, even though the special deputy, once appointed with the court's authority, is by statute subject to the specific supervision of the court, much like the Director).

Though a court must appoint the Director as Receiver, that does not dispose whether the Director, serving as the chief officer of MDI, and the Director, serving as a Receiver and thus as an officer of the court, are legally distinguishable. *Corcoran v. Nat'l Union Fire Ins. Co. of Pa.*, 143 A.D.2d 309, 532 N.Y.S.2d 376 (N.Y.App. Div.1988), suggests that technically, they are. In *Corcoran*, the court concluded that a "superintendent of insurance as liquidator . . . acts in a separate and distinct capacity from his role as regulator of the insurance industry." *Id.* at 378.[12]

Although *Corcoran* acknowledged the technical distinction between the director as a state official and the director as a liquidator, it did not do so in the context of discovery requests where the actions of the director in one or both capacities is claimed to have placed matters at issue,

and it did not rigidly hold that there is an all encompassing legal differentiation between the two roles. Instead, *Corcoran* merely held that in a lawsuit brought by the superintendent as liquidator, affirmative defenses asserted against the superintendent as the regulator of the insurance industry were "irrelevant." *Id.* We do not believe that ruling has application in the matter before us.

The practical reality is that the Director, in deciding to issue an administrative suspension, or in deciding to seek an order appointing himself as Receiver, is enforcing the Act, consistent with the Director's official duty under Section 374.040.1 "generally to do and perform with justice and impartiality *all such duties as are or may be imposed upon him by the laws, regulating the business of insurance in this state.*" (Emphasis added.) It is an exercise in form over substance to suggest that when the Director in his official capacity seeks to be appointed as a Receiver, the Director is divesting himself of his official obligation to enforce the Act. Being appointed as a Receiver is the vehicle which equips the Director to take legal charge, in one form or the other, of an insolvent insurance company. That does not mean, however, that the Director, once appointed as Receiver, is no longer acting in a fashion designed to comport with the Director's official duty to enforce the law, including the Act. It is a fiction to suggest that the Director as Receiver and the Director as the chief officer of MDI are not acting in unison to formulate a strategy to

**12.** MDI also cites *Williams v. Continental Stock Transfer & Trust Company,* 1 F.Supp.2d 836 (N.D.Ill.1998), in support of its argument that there is a legal distinction between MDI (which we have concluded incorporates the Director as the chief officer of MDI) and the Director as Receiver. However, *Williams* is not relevant to the issue presented here. In *Williams,* the court held that "[t]he Delaware Insurance Code enables the Commissioner of

Insurance to act as a receiver. Although the Commissioner is given the title of receiver, the Commissioner has two capacities: that of a rehabilitator and that of a liquidator." *Id.* at 843. The relevance of this discussion was in the context of distinguishing between a rehabilitator or liquidator and the insolvent insurance company, and *not* between the rehabilitator or liquidator and the department of insurance. *Id.*

address an insolvent domestic insurance company's financial crisis and, thus, a strategy to enforce the Act. Whatever technical pleading requirements may be necessitated by virtue of the Director assuming the mantle of Receiver, the fact remains that the Director as the chief officer of MDI is exercising his statutory right to secure appointment in a representative capacity for the singular purpose of performing the Director's official statutory duty to enforce the laws, including the Act. We find it impossible, therefore, to differentiate between the decisions made by the Director as the chief officer of MDI and the decisions made and/or implemented by the Director as Receiver with respect to the best means to address the financial crisis facing a domestic insurance company. That would include the decision to file and prosecute litigation to collect assets for an insolvent insurance company.

Thus, to the extent the Director, either as chief officer or as Receiver, receives legal advice about how best to address the financial crisis of a domestic insurance company, the Director is receiving that advice on MDI's behalf and in order to enable the Director to enforce the Act on MDI's behalf. If that legal advice or counsel is placed "at issue" in litigation filed by the Director (and whether or not in the Director's representative capacity as Receiver) for the purpose of enforcing MDI's obligation to execute the Act, then MDI's attorney/client privilege is waived as to that advice. It is immaterial whether the litigation has been initiated by the Di-

rector as Receiver, as technically required, and not by the Director as chief officer of MDI, or by MDI itself.[13]

Our decision is in accord with decisions reached in other jurisdictions under similar circumstances. In *Benjamin v. Sawicz*, 159 Ohio App.3d 265, 823 N.E.2d 879 (2004), the superintendent of insurance, in his capacity as a liquidator, brought an action against an insolvent insurer's officers and directors to recover for alleged breach of fiduciary duty by virtue of having concealed the insurer's financial condition. The lawsuit was filed by the superintendent of insurance "in his capacity as Liquidator." *Id.* at 880. The defendant officers and directors sought certain discovery from the plaintiff superintendent in his capacity as liquidator, but also from the superintendent in his capacity as a state employee. *Id.* The trial court ordered the superintendent of insurance "to respond to discovery requests both in [her capacity as liquidator] and in her statutorily separate capacity as director of the Ohio Department of Insurance." *Id.* An interlocutory appeal of the order was taken. *Id.* at 881.

Similar to the legislative scheme in Missouri, the Ohio legislative scheme appoints the superintendent of insurance as the Chief Executive Officer and Director of the Department of Insurance with all powers and obligations to perform the duties vested in the Department of Insurance. *Id.* The superintendent is also directed to see that the "laws relating to insurance are executed and enforced." *Id.*

13. Even were we to conclude that, in the context of the discovery disputes raised in this case, the Director as chief officer is distinguishable from the Director as Receiver, we would then be required to direct the trial court to determine whether attorney/client privileged communications between Sidley & Austin and the Director in either capacity were shared with the Director in his other capacity. MDI and the Director cannot claim on the one hand that MDI or the Director as chief officer possess a privilege distinct from the Director as Receiver, which the Director as Receiver cannot waive on their behalf, while on the other hand ignoring that any sharing of purportedly distinct attorney/client privileged communications between MDI or the Director with the Director as Receiver would bear the consequence of waiver of the privilege.

The court in *Sawicz* distinguished *Corcoran* and *Williams*. *Id.* at 884. It noted that said cases, along with others relied upon by the superintendent from other jurisdictions, "do not address discovery issues; rather those cases dealt primarily with whether various claims or affirmative defenses could be raised against a plaintiff in a capacity different from that in which the plaintiff appeared in the action." *Id.* The court held that "[e]ven accepting, however, that the superintendent in her capacity as liquidator acts separately and distinctly from her role as regulator, we do not find that distinction to be dispositive of the trial court's discovery order in this case." *Id.* The court held that "the dual identities of the superintendent of insurance could not prevent the superintendent's office as regulator from being required to comply with certain discovery requests." *Id.* at 885. The court relied in its analysis on the case of *In re Ideal Mutual Insurance Co.*, 140 A.D.2d 62, 532 N.Y.S.2d 371 (N.Y.App.Div.1988).

In *Ideal,* the court agreed with the superintendent's argument that as the court appointed liquidator, "he occupies a 'distinct legal *persona* differing in legal status from the *persona* of the Superintendent of Insurance, as the state official regulating the insurance industry.'" *Id.* at 374. The court in *Ideal* went on, however, to reject the superintendent's contention that this distinction precluded certain discovery requests. Specifically, the court held:

> In opposing the defendants' discovery requests, plaintiff again relies on the position that the distinction between the Superintendent's dual identities should prevent the Superintendent's office as Regulator from being required to comply with the discovery requests, since the Superintendent as Regulator is not a party to the action. However, as the motion court correctly noted, examination of a party in a different capacity

> may be had when its conduct in that other capacity has been placed in issue. Here, the conduct of the Superintendent prior to the time of liquidation has been placed squarely in issue. The plaintiff has under his control, in the Insurance Department, special and direct knowledge vital to the action and must disclose all information material and relevant to this action whether in his capacity as Regulator or Liquidator.

> Similarly unsupportable is plaintiff's further contention that because the Superintendent, as Regulator, is a separate and distinct third party, any deposition of his employees should be treated as depositions of "non-party witnesses," which would be available to the defendants only by means of subpoena ... and that any documents in the Superintendent's possession should be discoverable only by means of court order.... The reason for the cited provisions regarding discovery of non-party witnesses is to ensure that a non-party has notice and an opportunity to contest the discovery. By this very proceeding, however, appellant has had that opportunity to contest the discovery sought. Reversal now, would not serve to further either the statutory purposes nor any salutary purpose other than delay.

*Id.* at 375–76 (citation omitted). Applying similar logic, the court in *Sawicz* rejected the superintendent's claim that she was not attempting to impede discovery but, rather, to avoid being compelled in her capacity as liquidator to respond to discovery requests on behalf of a nonparty, that is, the superintendent in her capacity as the Director of the Department of Insurance. 823 N.E.2d at 887. The court stated:

> However, even assuming that the superintendent's action is properly characterized as one brought in her capacity as

liquidator, similar to *Ideal,* conduct occurring prior to liquidation and relevant to the ability of appellees to defend themselves has been placed in issue by the superintendent. Under these circumstances, and where appellant has under her control, through the department of insurance, "special and direct knowledge vital to the action," we find persuasive the *Ideal* court's conclusion that the superintendent must disclose 'all information material and relevant to this action,' whether in the superintendent's capacity as regulator or liquidator.

*Id.* (quoting *Ideal,* 532 N.Y.S.2d at 376).

It is true that neither *Ideal* nor *Sawicz* were addressing discovery disputes revolving around the attorney/client privilege but, instead, were addressing the general ability to secure discovery at all from the director or superintendent in a capacity other than as a receiver and, thus, as a non-party. We believe that fact to be immaterial, however. The rationale underlying the analysis in *Ideal* and *Sawicz* is equally applicable to a discovery dispute centering on a claim of waiver of the attorney/client privilege because the privileged communications have been placed at issue. As the court in *Sawicz* noted "where the superintendent has initiated an action against officers of a failed corporation and raised claims implicating matters within the knowledge of the department of insurance, presumably acquired both prior to and after the superintendent's appointment as liquidator, we are unable to conclude that the trial court erred in rejecting appellant's capacities argument, and we find no abuse of discretion by the trial court in rendering its discovery order." *Sawicz,* 823 N.E.2d at 887.

### Inconsistency in MDI's argument

MDI's claim that a legal distinction between MDI and the Director, or a legal distinction between the Director as chief officer and the Director as Receiver, applied to prevent the Director as Receiver from waiving MDI's attorney/client privilege is an obfuscation of the tallest order with respect to the Sidley Documents described in Paragraph Four. By definition, all of the Sidley Documents within the scope of Paragraph Four were necessarily generated on or after August 10, 1999, when the Director began acting as Receiver. It is plainly evident from the pleadings in the record that Sidley & Austin was acting as counsel to the Director as Receiver, and in fact, that Eric Martin, General Counsel to MDI, was acting as counsel to the Receiver. MDI cannot have it both ways. *Either* the Director as Receiver was operating on MDI's behalf to create an attorney/client relationship with Sidley & Austin from and after August 10, 1999, as to afford MDI an ability to claim that the "privilege" from and after that date is MDI's to waive (in which case the Director as Receiver necessarily had the corresponding authority to waive MDI's privilege by placing matters "at issue" in the Underlying Lawsuit). *Or* the Director as Receiver was operating as a distinct entity from MDI from and after August 10, 1999, such that any communications between the Director as Receiver (or its counsel, Eric Martin, per the pleadings) and Sidley & Austin could not have created an attorney/client privilege with MDI, leaving MDI with no standing to contest production of the Sidley Documents described in Paragraph Four on the basis of privilege. MDI presented *no evidence* suggesting that *any* of the Sidley Documents generated after August 10, 1999, involved other than Sidley & Austin's representation of the Director as Receiver. We can conceive of no reasoned basis to deprive Dewey & LeBoeuf access to Sidley Documents generated as a result of Sidley & Austin's representation of the Director as Receiver if such documents have been placed at issued by the allegations in the Underlying Lawsuit.

## Holdings

The legal conclusion on which the Respondent relied to enter the Orders is erroneous. MDI cannot create or waive an attorney/client privilege except through the actions of those authorized to act on its behalf. The Director, and those acting pursuant to the Director's supervision and instruction (such as MDI's General Counsel), are statutorily authorized to act for MDI and, thus, to create and to waive an attorney/client privilege on MDI's behalf if acting to enforce the laws relating to insurance companies. There is no legal distinction between MDI and the Director in this regard. Further, there is no distinction between the Director as the chief officer of MDI and the Director as Receiver, as relates to the Director's ability to create an attorney/client privilege for MDI or to waive that privilege by placing matters "at issue" in litigation filed to enforce the laws, including the Act. *See Ideal,* 532 N.Y.S.2d at 375 ("[E]xamination of a party in a different capacity may be had when its conduct in that other capacity has been placed at issue. Here, the conduct of the Superintendent prior to time of liquidation has been placed squarely in issue." (citation omitted)). Thus, if the allegations in the Underlying Lawsuit place the subject matter of the Sidley Documents described in Paragraphs Three or Four (which would include the Sidley Letter) "at-issue," then those documents are no longer protected by the attorney/client privilege, whether the documents were generated before or after the Director began acting as Receiver.

In the alternative, even if the actions of the Director as Receiver were to be treated as distinct from the Director as chief officer (which we do not endorse) as to prevent the Director as Receiver from being empowered to waive MDI's attorney/client privilege by placing matters "at issue" in litigation, the natural antithesis is that the Director as Receiver had no power to *create* an attorney/client relationship between Sidley & Austin and MDI. Thus, any and all communications between the Director, or those acting for the Director (including Mr. Martin as General Counsel), and Sidley & Austin from and after August 10, 1999, would have created an attorney/client relationship with the Director as Receiver and not with MDI. Under this alternative, MDI would have no standing to protect the Sidley Documents described in Paragraph Four from discovery as attorney/client privileged. Under this alternative, the Sidley Documents described in Paragraph Four would be subject to production if their subject matter has been placed "at issue" by the Director as Receiver's allegations in the Underlying Lawsuit.[14]

## Conclusion

The stay of the November 1, 2010 Orders entered by our order of November 9, 2010, is lifted. We enter our preemptory writ of prohibition and mandamus. Respondent is prohibited from enforcing the November 1, 2010 Order requiring Dewey & LeBoeuf and all parties to return all copies of the Sidley Letter. Respondent is ordered to vacate the November 1, 2010 Order addressing the Sidley Letter.

Respondent is ordered to reconsider that portion of its November 1, 2010 Order denying Dewey & LeBoeuf's motion to

---

**14.** We emphasize that we do not believe this alternative analysis to be controlling and, instead, believe the analysis that the Director is acting for MDI, whether acting as chief office or as Receiver, is controlling. However, it is appropriate to provide this alternative analysis to highlight that, at least with respect to the Sidley Documents within the scope of Paragraph Four, said documents cannot be protected from discovery under either approach if their subject matter has been placed "at issue" by the allegations in the Underlying Lawsuit.

compel production of the Sidley Documents described in Paragraphs Three and Four.[15] As respects the documents identified in Paragraphs Three and Four, Respondent is directed to determine as to each document: (i) whether the document actually qualifies, in the general sense, as an attorney/client communication, and (ii) whether the subject matter of the document has been placed "at issue" by the allegations in the Underlying Lawsuit. As to each document determined not to qualify, generally, as an attorney/client privileged communication, and as to each attorney/client privileged document which is determined to have been placed "at issue" by the Underlying Lawsuit, Respondent shall vacate his November 1, 2010 Order refusing to compel production of said documents, and shall enter his Order requiring production of said documents by MDI and the Director to Dewey & LeBoeuf.

All concur.

---

**15.** The Respondent's November 1, 2010 Order ordering MDI/Director to produce the documents described in Paragraph One and Paragraph Two is not vacated by this Opinion and remains in force and effect.